**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
MASTER IN CHANCERY

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: May 8, 2023
Final Report: May 11, 2023

Peter B. Ladig, Esquire
Emily L. Skaug, Esquire
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware 19801

Patricia R. Urban, Esquire
Elizabeth Wilburn Joyce, Esquire
Megan Ix Brison, Esquire
PINCKNEY WEIDINGER URBAN
& JOYCE LLC
2 Mill Road, Suite 204
Wilmington, Delaware 19806

      RE: *Minnie Sarwal v. Nephrosant, Inc.*,
           C.A. No. 2023-0222-BWD

Dear Counsel:

This final report addresses Dr. Minnie Sarwal's ("Plaintiff") motion for continued confidential treatment of information redacted in the public version of Nephrosant, Inc.'s ("Nephrosant") answer and counterclaims filed in this action (the "Motion"). The redacted information in dispute describes wrongdoing that Plaintiff allegedly committed during an internal investigation undertaken by a special committee of the corporation's board of directors. Because Plaintiff has failed to demonstrate good cause for confidential treatment of these allegations, I recommend that the Motion be denied.

By way of background, on February 21, 2023, Plaintiff initiated this action for advancement and indemnification against Nephrosant, a Delaware corporation that Plaintiff founded six years ago "to develop and monetize one of [her] concepts, a non-invasive urine test to identify the risk of transplant rejection commercially known as QSant."   Verified Compl. ¶ 3, Dkt. No. 1 [hereinafter, "Compl."]. According to Plaintiff's Verified Complaint (the "Complaint"), the company "steadily achieved success" under Plaintiff's leadership, until investors with representation on the company's board of directors (the "Board") ousted her under the "artifice" of an internal investigation undertaken solely to "justify freezing [Plaintiff] out" of the company.  *Id*. ¶¶ 1, 8-9.  In short, the Complaint alleges that in early 2022, weeks after removing Plaintiff as CEO, the Board established a committee of directors (the "Special Committee") to investigate "complaints from unnamed employees" about assays used in the company's QSant product.  *Id*. ¶ 13. Plaintiff alleges that although she was placed on administrative leave and her access to the company's servers and email was suspended during the Special Committee's investigation, Plaintiff "cooperat[ed] fully with" the investigation, "the investigation found no wrongdoing by her," and she is entitled to indemnification of fees and expenses incurred in responding to the investigation.  *Id*. ¶¶ 20, 22, 25, 28.

Nephrosant filed its Answer and Verified Counterclaims to Plaintiff's Verified Complaint (the "Counterclaims") under seal on March 27, 2023. Def. Nephrosant, Inc.'s Answer and Verified Countercls. to Pl.'s Verified Compl., Dkt. No. 9 [hereinafter, "Countercls."]. The Counterclaims assert four causes of action, including two counts seeking declaratory relief that Plaintiff is not entitled to indemnification or that Nephrosant is entitled to a set off under a separate note agreement; a count for "computer related offenses" pursuant to 11 *Del. C.* §§ 931 *et. seq.*; and a count for breach of fiduciary duty. As required by Court of Chancery Rule 5.1, Nephrosant subsequently filed a public version of the Counterclaims, which redacted information that Plaintiff designated as confidential. Generally, the redacted allegations describe the Special Committee's conclusions based on its investigation and Plaintiff's alleged misconduct during the investigation, "in violation of her confidentiality and fiduciary obligations to the Company." Countercls. at 13.

On April 4, 2023, Nephrosant filed a Notice of Challenge to Confidential Treatment of the redacted allegations in the public version of the Counterclaims. On

April 12, 2023, Plaintiff filed the Motion, and on May 5, 2023, Nephrosant filed its opposition to the Motion.[1]  This action was reassigned to me on May 8, 2023.

"Court of Chancery Rule 5.1 serves to 'protect the public's right of access to information about judicial proceedings,' ensuring that 'most information presented to the Court should be made available to the public.'" *In re Lordstown Motors Corp. S'holders Litig.*, 2022 WL 601120, at *3 (Del. Ch. Feb. 28, 2022) (citing *Sequoia Presidential Yacht Gp. LLC v. FE Partners LLC*, 2013 WL 3724946, at *2 (Del. Ch. July 15, 2013)).  "United States' citizens have a fundamental right . . . to an open court system." *Cantor Fitzgerald, Inc. v. Cantor*, 2001 WL 422633, at * 1 (Del. Ch. Apr.17, 2001).  Accordingly, when parties "seek the benefits of litigating in a public court," they also assume the responsibility "to disclose previously non-public information in order to satisfy the public's right of access to court documents," including "information necessary to understand the nature of the dispute they litigate." *Al Jazeera Am., LLC v. AT & T Servs., Inc.*, 2013 WL 5614284, at *7 (Del. Ch. Oct. 14, 2013).

---

[1] The parties also dispute confidential treatment of information redacted in the public versions of Plaintiff's Reply to Defendant's Counterclaims filed on April 25, 2023, and Nephrosant's opposition to the Motion filed on April 27, 2023, on the same grounds addressed herein. *See* Dkt. Nos. 27, 29, 31.  At a May 5, 2023 scheduling teleconference before the Chancellor, the parties confirmed that Plaintiff's two outstanding motions for confidential treatment and Nephrosant's three notices of challenge to confidential treatment are fully submitted.

Court of Chancery Rule 5.1 reflects this Court's commitment to these principles, explaining that, "[e]xcept as otherwise provided in this Rule, proceedings in a civil action are a matter of public record." Ct. Ch. R. 5.1(a). "The party or person seeking to obtain or maintain Confidential Treatment always bears the burden of establishing good cause for Confidential Treatment." Ct. Ch. R. 5.1(b)(3). "Good cause exists only where the public interest in access to Court proceedings is outweighed by the harm public disclosure of sensitive, non-public information would cause." *In re Boeing Co. Derivative Litig*., 2021 WL 392851, at *2 (Del. Ch. Feb. 1, 2021); *see also* Ct. Ch. R. 5.1(b)(2). "The 'public interest' is especially strong where the information is material to understanding the 'nature of the dispute,'" in which case "denial of public access to material requires a 'strong justification.'" *In re Oxbow Carbon LLC*, 2016 WL 7323443, at *2 (Del. Ch. Dec. 15, 2016) (citing *Al Jazeera*, 2013 WL 5614284, at *7, and *Horres v. Chick-fil-A, Inc*., 2013 WL 1223605, at *1 (Del. Ch. Mar. 27, 2013)).

The Plaintiff here contends that good cause exists for continued confidential treatment of Nephrosant's "inflammatory allegations" describing Plaintiff's misconduct during the Special Committee's investigation because (1) Nephrosant included these allegations "knowing and intending for the allegations to cause [Plaintiff] great professional and personal embarrassment once published"; (2) the

allegations do not pertain to viable claims in the action; (3) "the relevant acts all occurred approximately one year ago" and are therefore "stale"; and (4) disclosure of these allegations risks harming the company by jeopardizing its ability to obtain desperately needed funding. Pl.-Countercl. Def.'s Mot. for Continued Confidential Treatment of Nephrosant's Answer and Verified Countercls. to Pl.'s Verified Compl. ¶¶ 3, 12, 14, 16, Dkt. No. 15 [hereinafter, "Mot."].

First, Plaintiff contends that Nephrosant's "inflammatory allegations" are focused "on causing embarrassment" to Plaintiff. Mot. ¶ 14; *see also id*. ¶¶ 3, 7, 11-12, 14-15. The allegations at issue do not strike me as particularly "inflammatory" or salacious, but in any event, as Plaintiff acknowledges, "information that 'may be embarrassing or previously undisclosed does not alone warrant confidential treatment.'" *Id*. ¶ 11 (citing *Al Jazeera*, 2013 WL 5614284, at *4).[2]

Next, Plaintiff argues that allegations of her wrongdoing should remain confidential because they do not pertain to viable claims in the action. Mot. ¶¶ 3, 7,

---

[2] *See also, e.g.*, *Soligenix, Inc. v. Emergent Prod. Dev. Gaithersburg, Inc*., 289 A.3d 667, 677 (Del. Ch. 2023) ("'[T]hat the information for which a party seeks confidential treatment may be embarrassing or previously undisclosed does not alone warrant confidential treatment.'") (citing *Sequoia*, 2013 WL 3724946, at *2)); *In re Boeing Co. Derivative Litig*., 2021 WL 392851, at *4 (same); *Manhattan Telecomms. Corp. v. Granite Telecomms., LLC*, 2020 WL 6799122, at *3 (Del. Ch. Nov. 19, 2020), as corrected (Nov. 20, 2020) (noting that "potential embarrassment or the fact that the information has not previously been disclosed" is "not enough" to overcome the presumption of public access).

12-14. In making this argument, Plaintiff fixates on Nephrosant's counterclaim for computer related offenses, asserting that this count does not fall "within this Court's jurisdiction." But in addition to that claim, the allegations Plaintiff seeks to keep redacted also form the basis for Nephrosant's defense that Plaintiff is not entitled to indemnification because she did not act in good faith in connection with the Special Committee's investigation, as well as its claim that Plaintiff breached her fiduciary duties during the investigation.[3]

Plaintiff also contends that the alleged misconduct in question "occurred approximately one year ago" and is therefore "stale." Mot. ¶ 14. That argument cuts *against* continued confidential treatment since disclosure of older information is less, not more, likely to cause harm.[4]

---

[3] *See Partner Invs. L.P. v. Theranos, Inc.*, 2017 WL 2303954, at *3 (Del. Ch. May 25, 2017) (denying in part motion to maintain confidential treatment, rejecting argument that certain documents "should remain confidential because they do not pertain to the parties' disputes in the case" where information supported multiple theories in the case); *In re Oxbow Carbon LLC*, 2016 WL 7323443, at *3 ("The parties also undervalue the importance of other aspects of this case. By focusing almost exclusively on their contractual claims, they downplay the claims for breach of fiduciary duty, reformation, and tortious interference. Nearly all of the purportedly confidential information relates to these claims. Information revealing the individual defendants' motives is essential to understanding the parties' fiduciary duty claims.").

[4] *See Oklahoma Firefighters Pension Ret. Sys. v. Corbat*, 2017 WL 5484125, at *2 (Del. Ch. Nov. 15, 2017) ("[A]ny cognizable detriment represented by reference to . . . stale documents is unlikely to outweigh the public interest in these proceedings."); *In re Oxbow Carbon LLC*, 2016 WL 7323443, at *3 (requiring disclosure of information that was "stale and lack[ed] competitive value"); *Reid v. Siniscalchi*, 2014 WL 6486589, at *1 n.2 (Del.

Finally, Plaintiff argues that if "allegations that a former executive" engaged in misconduct are made public, this "would indeed cause harm to the Company in the marketplace." Mot. ¶ 16. This concern is particularly "acute" here, she says, because "the Company needs funding," and "disclosure of this damaging type of information often makes funding more expensive or not available at all." *Id*. Coming from the former executive alleged to have engaged in the wrongdoing, this is an interesting take on harm *to the party advocating for public disclosure*. In any event, assuming the harm Plaintiff has identified is sufficiently concrete to otherwise justify confidential treatment,[5] it does not outweigh the public interest in understanding the nature of the dispute. It is "difficult to imagine" an action involving allegations of fiduciary breaches where at least some potential for harm to the company "would not *always* be present." *Manhattan Telecomms. Corp.*, 2020 WL 6799122, at *4 (emphasis in original). Yet permitting the parties to conceal the nature of the defendant's defenses and counterclaims "'merely because its disclosure

---

Ch. Nov. 20, 2014) (observing that disclosure "concerns . . . lose force with the passage of time").

[5] *See In re Boeing Co. Derivative Litig*., 2021 WL 392851, at *2 ("A party seeking confidential treatment based on harm to its business relationships with customers 'must point to *specific information* like trade secrets or competitively sensitive pricing information that is not in the public mix and, if disclosed, will cause *clearly identified harm*.'") (emphasis added).

could cause the parties economic harm' would turn the presumption of public access on its head and frustrate the purpose of Rule 5.1." *Id.*

Nor could this Court "render and deliver a comprehensible decision without reference to the currently redacted information" that forms the basis of Nephrosant's defenses and counterclaims. *Id*. at \*5. Plaintiff's Complaint, which was *not* filed confidentially, alleges that the Special Committee's investigation was a "sham," but that Plaintiff nevertheless fully complied, and no wrongdoing was uncovered. The Motion seeks to conceal Nephrosant's response, but a final adjudication of this matter necessarily will decide—publicly—whose version of the facts is correct.

For these reasons, I recommend that the Motion be denied. Separately, I understand that Plaintiff has filed a partial motion to dismiss Count III of the Counterclaims. It strikes me as most efficient to address that motion at the two-day trial in July 2023, but if the parties wish to submit letters arguing otherwise, I am happy to consider them.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Master in Chancery

cc:     All counsel of record (by File & ServeXpress)